## John Davis v. George T. Ladue.

*Contract—Extra Services.*

Assumpsit lies for extra services in running a drive of logs where the original contract only bound the plaintiff to run them within a reasonable time and with reference to existing conditions, and the extra services were such as became necessary and were agreed upon in consequence of the failure of the stream in which they were run.

Error to Shiawassee. (Newton, J.) Oct. 7.--Oct. 14.

Assumpsit. Defendant brings error. Affirmed.

*Hugh McCurdy* and *A. McDonell* for appellant.

*G. R. Lyon* for appellee.

SHERWOOD, J. On the 15th day of October, 1883, the defendant owned a certain tract of timber land situate in the county of Otsego, supposed to contain, at the time, two million feet of lumber. On that day the plaintiff made a contract with defendant, whereby he agreed, during the ensuing winter, to deliver upon the bank of Black River the pine upon said lands, cut into merchantable logs, at $4.50 per thousand feet, and in case the defendant did not sell the logs on the bank the plaintiff further agreed to mark the logs at both ends and put them afloat in the river and run them to Cheboygan for the sum of two dollars per thousand. No particular time was mentioned within which this should be done, but it seems to have been conceded by the parties that the season of 1884 would constitute a reasonable time within which it should be done under the contract.

The plaintiff broke the logs into the river in good season, and commenced to run them down the river and into Black Lake. The river was a very small stream where the logs were banked, and after running them down to a point known as " Chandler's Dam," the water got so low that the plaintiff ceased his efforts to go further with them, or, in the lumberman's language, " hung up the drive," to await a rise in the river from rainfall, and immediately informed the defendant of the situation of the logs and what he had done. At this time, which was the last of May, the water in the river was very low, and the logs could only be run by the use of dams to float them, which was very expensive. Upon being informed of the situation the defendant had a treaty with the plaintiff in regard to continuing the drive, and at the request of the former he agreed to continue the drive and cross the dam with the logs, and go as much further as defendant desired, if the defendant would pay him the extra expense therefor. One White had a drive ahead of defendant in the stream, and after the defendant had made an arrangement with White to have plaintiff run both drives,

each to share the expense, defendant informed the plaintiff he would pay the extra expense of running his logs, and ordered the plaintiff to move on down the stream.

The plaintiff complied with the request, and by raising dams secured floatage for the time being for the logs, and ran them over the Chandler dam down the stream, into and across Black Lake, until low water on the rapids below was reached, and there the drive was again "hung up." At this point the defendant came to the plaintiff and wished to take his logs and himself run them the remainder of the route to Cheboygan, and an arrangement was entered into between them whereby the plaintiff was to pay the defendant three hundred dollars, and the plaintiff was to be released from further running the logs. A settlement was then had between them as to the extra expense the running of the logs to that point amounted to, and it was ascertained that the defendant's part was $367. White's portion was also agreed upon and by him paid. The $367 the defendant refused to pay, claiming that the plaintiff had done no more than he was obliged to under the original contract; and that by reason thereof there was no consideration for the contract to pay for the extra labor in taking the drive over the Chandler dam and other low water before the logs reached the rapids below the lake.

To recover for the extra labor, the sum of $367, and the other moneys due upon the original contract, the plaintiff brought this suit in the Shiawassee circuit. The cause was tried before a jury, and a recovery was had against the defendant for the sum of $1502, in which was included the item of $367 for the extra services. The defendant brings error, and we have before us a bill of exceptions containing all the evidence touching the item of extra services and expense thereof.

The appellant desires to submit but one question in this case for the consideration of the Court; that is, was the plaintiff entitled to recover for the extra services the $367? We think, under the testimony contained in the record, and the charge given by the court and the finding of the jury, the

plaintiff was entitled to recover for the extra service, and that the judgment rendered in the case is right. The verdict of the jury is general, and upon all the material questions upon which testimony was given, whether conflicting or not, and is conclusive. It is against the defendant, and unless some error is contained in the charge, it disposes finally of the case. Judge Newton charged the jury as follows:

"The true intent of the contract in question requires the plaintiff to run the logs during the season of 1884; and it was the duty of the plaintiff to use reasonable diligence in performing this work of running the logs while it was practicable to run them. If the jury find that in May, 1884, the water became so low that the logs would no longer float, and the plaintiff hung up the drive, and if you find it was reasonable for him to do so and not in violation of his contract, and the defendant after going up and looking at the river and the water and seeing for himself the stage of the river, and told the plaintiff if he would get back his men and run the logs at once he would pay him the cost, over and above the contract, then the plaintiff is entitled to recover the amount of such cost, if you find the time for running such logs had not expired, and that the defendant had a contract for the delivery of the logs within that time, and that the delay was not caused by the willful neglect of plaintiff, but was forced on him by necessity, arising from the low condition of the water. If the contract had provided a definite day or time when the logs should be delivered at all hazards by the plaintiff, I would not hesitate to tell you that promise was void, and the plaintiff could not recover. But the contract does not mention any particular day for the completion of the work. The plaintiff was bound to put them into the stream with due and reasonable diligence in the season, and to use reasonable and due diligence, having reference to the capacity of the river for floatage, during the season; then with sufficient force to run them with dispatch to the place of delivery. If you find from the evidence he was doing this with reasonable diligence, and within the life-time of his contract, and that the water became so low that it was impossible to run the logs in the customary manner of such rivers, and that the floatage of the logs was not detained by any negligence or want of diligence on his part; and if you further find that the defendant being informed of the danger of not getting the logs down in time to fill his contract

for delivery to Mr. Turner at Cheboygan in the usual and customary manner of running logs on that stream, and that the defendant then requested him to make extra exertions to get them down in time to fill his (defendant's) contract with Mr. Turner, and that he would pay the expense over that which would ordinarily be incurred—then such promise would not be void, but would be valid; and if the work so accomplished by the extra labor, at the request of the defendant for the purpose of filling his contract within the lifetime of the contract, of the plaintiff in this suit, the expense so incurred in doing so by the plaintiff, the plaintiff would be entitled to recover for such extra cost in doing the work. But if you find that the plaintiff was not diligent but negligent of his duty to the defendant, and might have run down the logs before the time they were tied up for want of water, and abandoned the running of the logs, or delayed the running of them, for the purpose of getting a better bargain from the defendant, or entirely abandoning his contract, and the promise was made to him under such circumstances, then the promise would be void, and the plaintiff could not recover for that item. A contract, gentlemen, for running logs on a particular stream must be construed and considered by court and jury with reference to the stream and the condition of the water-way provided for their delivery, the opening of the spring, the quantity and duration of the water; and the diligence required of the plaintiff in performing his contract must be according to the facilities it affords for completing the work in a reasonable time during the season for running logs."

This charge we think unexceptionable. It was the extra work in driving the logs at the low stage of water that defendant promised pay for, and we cannot say the jury found for any other. By extra services the jury must have understood such as would have been unnecessary with an ordinary stage of water, and undoubtedly excluded any other in the computation in making up their verdict.

The judgment must be affirmed.

The other Justices concurred.